WILLIAM A. POLLOCK, APPELLANT, V. LEVI SMITH ET AL., APPELLEES.

FILED DECEMBER 16, 1896.   No. 6946.

1. **Contracts: RESCISSION: TIME: AFFIRMANCE.** The right to rescind a contract on account of fraud must be promptly exercised upon the discovery of the ground therefor. The continued use or employment of property will, in such case, be deemed an election to affirm the contract under which it is received. (*American Building & Loan Association v. Rainbolt*, 48 Neb., 434.)

2. ———: **FRAUD: ELECTION OF REMEDIES.** One who is deceived by means of the fraudulent representations of another may elect to rescind the contract and reclaim the property parted with, or to affirm the agreement and pursue his ordinary remedy by an action thereon. Such remedies are, however, not concurrent, but inconsistent, and by electing to pursue one with a knowledge of the facts he waives his right to the other. (*First Nat. Bank of Chadron v. McKinney*, 47 Neb., 149.)

3. ———: ———: **AFFIRMANCE.** Evidence examined, and *held* to establish an affirmance by the plaintiff of the contract sought to be rescinded on the ground of fraud.

APPEAL from the district court of Cedar county. Heard below before NORRIS, J.

*Wilbur F. Bryant* and *Barnes & Tyler*, for appellant.

*Jay & Beck, contra.*

POST, C. J.

This is an appeal from a decree of the district court for Cedar county dismissing the petition of the plaintiff, who alleges a rescission of the following agreement and seeks to recover the title of certain real estate conveyed pursuant thereto:

"Agreement made and entered into this 31st day of July, 1891, between W. A. Pollock, of South Sioux City, Nebraska, of the first part, and Levi Smith, of same place, party of the second part, witnesseth:

"That W. A. Pollock of the first part, for and in consideration of $4,800.00 and $1,200.00 ($6,000.00), or of a conveyance of property hereinafter described, does hereby covenant and agree with said party of the second part to deed said party of the second part the following described real estate, to-wit: The S. E. quarter of section 22, in township 30, range 2 east, in Cedar county, Nebraska, and lot ten (10), in block eleven (11), in the village of Coleridge. Said party of the first part also agrees to deliver to said party of the second part, as part of consideration before mentioned, one black mare named 'Dollie,' one black three-year-old colt now in pasture on Thos. L. Griffy's farm, one Orchard City wagon, complete, and one set of double harness, and provided that said party of the first part hereby reserve one set of large Victor scales now on said farm, and provided that there is an incumbrance of $1,275 of mortgage and taxes on said above described farm to be assumed by the party of the second part; and party of the first part further agrees that if any further claims than above described be brought against said premises, he will pay and settle the same, also furnish abstract complete.

"Levi Smith, party of the second part, in and for the consideration hereinbefore mentioned, agrees to sell to party of the first part and convey, by good warranty deed, the south forty-four feet of lots one (1), two (2), and three (3), in block twelve (12), in First Add. to South Sioux City, Nebraska, including all building and appurtenances now thereon, together with all furniture and fixtures now in the hall of said building, except one organ, for the sum or consideration of $6,000, or a conveyance of said premises of party of the first part hereinbefore described, except incumbrances as follows, to-wit: $800 mortgage to National Building & Loan Association of Minneapolis;

$1,000 mortgage to R. Orham; $227.78 mchs. lien, Edwards & McCullough & Co., and $55 mortgage on scenery and fixtures to M. O. Ayers.

"Party of the second part also agrees to furnish a complete abstract to the above described premises; and provided also, that in the event of any liens or claims other than above described shall appear against said premises and property, said Smith agrees to pay off and discharge the same at once; also agrees to assign eleven (11) shares of stock in the National Building & Loan Association of Minneapolis, Minn., to said party of the first part; also agrees to assign all his interest in and to his insurance policies, affecting said property, free of charge, provided that said party of the second part reserves the right to occupy all the building upon said premises, except the hall, until the 1st day of September, 1891, also provided that if said Smith shall vacate before September 1, 1891, that Pollock agrees to vacate his property at Coleridge at once for said Smith.

"In witness whereof, we hereunto set our hands this 31st day of July, 1891.        W. A. POLLOCK.    [SEAL.]
                                        "LEVI SMITH.      [SEAL.]"

The grounds upon which the right of rescission is asserted are: (1.) That the eleven shares of stock of the National Building & Loan Association described in the foregoing agreement were by the defendant Levi Smith, falsely represented as fully paid up and of the value of $900, whereas they had been forfeited on account of the non-payment of assessments previously made against them amounting to the sum of $47.    (2.) The defendant above named falsely represented that he was possessed of an absolute title in fee-simple of the real estate which he had by said agreement covenanted to convey, whereas he had in fact no title whatever to the east twelve feet of lots 1, 2, and 3, in block 12, of the First Addition to the village of South Sioux City.    (3.) There were against the real estate which the defendant so covenanted to convey, incumbrances amounting to the sum of $1,370.22 in ex-

cess of the amount represented by him as an inducement to the exchange of property contemplated by said agreement.

The defendants answered, admitting the execution of the agreement above set out and the conveyance by the plaintiff as charged, and denying the other material allegations of the petition. They allege also that the plaintiff accepted a deed from the said Levi Smith of the property which the latter had undertaken to convey, with full knowledge of the fact that he was not seized of the east twelve feet of lots 1, 2, and 3, above described, whereby he, plaintiff, elected to affirm said agreement and the conveyances made pursuant thereto. It is further alleged that the plaintiff, at and before the execution of said contract and deeds, was fully advised respecting the incumbrances existing against the property conveyed by the said Levi Smith. The finding of the district court was, in effect, that the plaintiff, by the acceptance of the deed of the lots described, knowing the infirmity of the defendant's title to a fractional part thereof, elected to affirm the agreement, and the conveyances made pursuant thereto, and that he must, as a consequence thereof, seek redress in damage by means of an action upon the said contract.

The evidence upon which the above finding is predicated tends strongly to prove that during the time, about three hours, which intervened between the signing of said agreement and the execution and delivery of the deed by Smith, the latter's title was the subject of a general discussion by the parties present, including the plaintiff, who expressed his satisfaction with the explanation given, viz., that the twelve feet in question had been previously dedicated to the use of the public as an alley, and it is certain that he accepted and caused to be recorded the deed with full knowledge of the exception therein expressly made with respect to the strip of ground to which such representation applied and with knowledge of the liens against the property so conveyed.

It is further shown that the plaintiff, on the 12th day of December, 1891, contracted in writing with one Wakeley for the lease by the latter of the property conveyed by Smith for the period of one year from and after December 15, and that he received from the lessee above named the sum of $10, being the rent reserved for one month at the stipulated rate. There appears to have existed, almost from the first, controversies between the parties relating to the execution of the contract, which resulted in mutual charges of fraud. There was, however, so far as the record discloses, no election, either express or implied, by the plaintiff to rescind, and no attempt by him to place the defendant *in statu quo* until the commencement of this action in the district court, March 10, 1892. It was said by this court in *American Building & Loan Ass'n v. Rainbolt*, 48 Neb., 434: "There is no rule more firmly established, or resting upon more just and equitable principles, than the right of rescission on account of fraud must be promptly exercised on the discovery of the ground therefor, and that the continued use or employment of property will in such case be construed as an election to affirm the contract under which it is received." The party defrauded, as said in the case above cited, has his election of remedies, viz., compensation in damages, or to be restored to the position in which he stood before the consummation of the contract. Such remedies are, however, not concurrent but inconsistent, and one who has, with a knowledge of the facts, made his election, must be satisfied to abide thereby. (See, also, *First Nat. Bank of Chadron v. McKinney*, 47 Neb., 149.) The case at bar is, we think, clearly within the principle there recognized, and the plaintiff, however meritorious his claim, having elected to affirm the agreement now assailed, should be content with the relief obtainable in an action thereon.

DECREE AFFIRMED.